## Horsham Fire Company *v.* Fort Washington Fire Company, Appellant.

Argued November 16, 1955. Before STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Victor J. Roberts,* with him *High, Swartz, Childs & Roberts,* for appellant.

*Cassin W. Craig,* with him *William W. Vogel* and *Wisler, Pearlstine, Talone & Gerber,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 3, 1956:

This case is unique in that it has to do with two fire companies which responded to an alarm to fight the common enemy and ended up by fighting each other. On October 9, 1951, the fire truck of the Horsham Fire Company collided with the fire truck of the Fort Washington Fire Company at the intersection of Welsh Road and Butler Pike in Montgomery County. The Horsham Fire Company sued the Fort Washington Fire Company in trespass and recovered a verdict of $10,331. The defendant moved for judgment n.o.v. and a new trial. The Court below refused judgment n.o.v. and granted a new trial. The plaintiff did not appeal from the order ordering the new trial. The defendant appealed urging the entering of judgment n.o.v.

Under the well-recognized rule that in considering judgment n.o.v. the testimony must be read in the light most favorable to the verdict winner, we agree with the Court below that the jury was justified in finding for

the plaintiff fire company and that the facts would not warrant judgment n.o.v.

It is to be observed at the outset that the owners of emergency vehicles such as ambulances, police wagons and fire department vehicles, despite privileges allowed them under The Vehicle Code, are responsible in damages for reckless disregard of the rights of others. *Roadman v. Bellone,* 379 Pa. 483; *Wolfe v. Pittsburgh,* 373 Pa. 626; *Mansfield v. Philadelphia,* 352 Pa. 199; *La-Marra v. Adam,* 164 Pa. Superior Ct. 268; *Oakley v. Allegheny County,* 128 Pa. Superior Ct. 8.

In the case at bar the driver of the defendant Fort Washington fire truck drove through a Stop sign on Butler Pike at a speed of from 55 to 60 miles per hour into an intersection which he knew to be a dangerous one, aware that drivers approaching from his right on Welsh Road could not see him because of a field of standing corn, as indeed it also shut off his vision of traffic coming from the east on that thoroughfare. It became a question for the jury to determine whether this conduct did not constitute a reckless disregard of the rights of others on the highway, even though the defendant truck was responding to a fire alarm and even though it had certain privileges under The Vehicle Code.

The driver of the plaintiff Horsham fire truck, although also entitled to the same privileges enjoyed by the Ft. Washington fire truck, was circumspect in his approach to the perilous intersection. While not ignoring the demands for reasonable dispatch in the fulfillment of his appointed mission to reach the conflagration to which his fire company had been summoned, he adjusted his movement to the circumstances which confronted him. Taking heed of a bus which had stopped on Welsh Road he decelerated his speed to 20 to 25 miles per hour and swung around the bus as he ap-

proached Butler Pike. Aware of the Stop sign on Butler Pike, which should halt all traffic before crossing Welsh Road, and knowing that he was approaching the intersection from the right, he had reason to assume that the crossing would be clear for him to pass. He could not see the approaching defendant truck because of the field of unharvested corn which screened the lateral view of Butler Pike from his vision, nor could he hear the siren and bell of the defendant's truck because of the din being made by his own warning, noise-making devices as he prudently hurried on his errand. Suddenly a "big red flash and a blur" loomed before him, and the crash followed. The speed of the defendant truck carried it 81 feet beyond the point of the impact, the plaintiff truck drifted 31 feet before it turned over.

If the vehicles involved in this accident had been ordinary pleasure cars or business trucks, it is perhaps unlikely that the defendant would be seeking judgment n.o.v. since the issue of negligence, which was not a complicated one, was properly submitted to the jury which could find, as it undoubtedly did, that the defendant vehicle proceeded into the intersection at an excessive rate of speed after ignoring Stop signs. It is urged, however, on behalf of the defendant, that this encounter was not the usual traffic accident since the defendant vehicle was an apparatus enjoying certain immunities under The Vehicle Code.

It is true that fire department cars are not bound by certain prohibitions in the Code. Sec. 501 (f) (6) of The Vehicle Code, 75 P.S. 501 provides that "The speed limitations set forth in this section [50 miles per hour] shall not apply to vehicles when operated with due regard for safety . . . to fire department . . . vehicles when traveling in response to a fire alarm . . ."

Section 591 (d) of the Code declares that this section [requiring stoppage at "Thru Traffic Stop" signs] "shall not apply to vehicles, when operated with due regard for safety . . . to fire department or fire patrol vehicles responding to a fire alarm."

Section 1013 of The Vehicle Code, 75 P.S. 572, directs that when two vehicles approach an intersection at approximately the same time, "the driver of the vehicle . . . on the left, shall yield the right of way to the vehicle . . . on the right." Section 1014 (b), however, provides an exception to this rule, namely, "The driver of a vehicle upon a highway shall yield the right of way to . . . fire department vehicles."

In view of these legalized immunities in behalf of fire department vehicles from requirements laid down for the ordinary passenger and commercial vehicles by the Code, counsel for the appellant contends that his client cannot be held liable in damages for doing what the law permits. But it is to be noted in this connection that while the law—in view of the vital and urgent missions of fire department vehicles—wisely allows them certain privileges over other vehicles, it does not assign to them absolute dominion of the road. The appellant's fire truck was engaged in a praiseworthy enterprise: it was on its way to extinguish a conflagration, it had the right to proceed through red lights, to surpass speed limits, and to take the right of way over ordinary vehicles. No words can be too laudatory in extolling the merit and sacrifice of members of volunteer fire companies who expend time, money, energies and often health and impairment of body without any recompense except the satisfaction of serving one's community and one's fellowman. The defendant here is a volunteer fire company, but it is to be kept in mind that the plaintiff is *also* a volunteer fire company. Its fire truck was also on its way to a fire, in fact, the same

fire as that which cried for the services of the defendant company. The plaintiff company thus also had the right to discard speed limitations and to pass up stop signs.

It is, of course, regrettable that the vehicles of these estimable organizations should have met in collision. It is unfortunate that the very attribute which sounds the highest praise for fire companies, namely, speed, should have been the very demon which brought about their undoing. The need for celerity of movement on the part of fire engines and fire trucks is not only traditional but objectively demonstrable. The sooner the fire-extinguishing apparatus arrives at the conflagration, the less chance there is that human lives and valuable property will be lost in the all-consuming blaze. But speed which is uncontrolled, is capable of wreaking as much havoc and causing as much sorrow as fire itself.

What happens when two vehicles with equally assumed privileges insist on the right of way? The answer was dramatically provided in this case: collision, destruction and disaster. It was providential that, considering the massive weight and size of the two trucks, no one was killed or injured. The most poignant type of regret is that which is based on a misfortune which could have been avoided, and it requires no sapience to conclude that when the paths of two fire engines cross, one of them must stop. This is not only a matter of common sense, but a proposition of imperious self-preservation.

The authors of The Vehicle Code, in providing exemptions for fire vehicles, police cars, and ambulances, obviously intended those exemptions to operate as against ordinary non-privileged vehicles, and not as against each other. Certainly they did not plan to set up at street crossings an arena of combat between po-

lice motorcycles and ambulances, hook-and-ladder vehicles and police wagons, between fire trucks and fire engines. Where parity is involved, elementary judgment dictates that normal rules must apply. Two police cars as against each other enjoy no privileges under the code. Their common purpose wipes out priority. If two police cars chasing a bandit arrive at an intersection precisely at the same moment, and communication between the two cannot decide sequence of passage, the drivers should accept the normal rule of the road, and allow the one approaching from the right to take priority—if the bandit is not to escape because of self-entanglement of the pursuers. If two fire trucks arrive simultaneously at intersecting streets, one being confronted with a Stop sign and the other with a Through Highway beacon, the fire truck facing the Stop sign should stop to permit the other to proceed. It would be absurd for both vehicles to insist on precedence because they happen to enjoy similar privileges under the Code. As a matter of fact, when one studies the whole blueprint of the Code, it will be seen that the privileges are not actually similar. Circumstance can always befog a picture so that movement must depend on current adjustment to what is best for all travelers concerned. If insistence is to ignore facts and impetuosity is to plunge forward blindly, the resulting conflict will be injurious not only to vehicles and drivers, but to the public welfare in addition.

Appellant's counsel complains in his brief that to sustain the lower Court would mean that the driver of every fire truck "must be prepared to slow down at every intersection to yield the right of way to some other hypothetical fire department vehicle that might just possibly be approaching from his right." But the Horsham fire truck was not a hypothetical fire department vehicle. There is nothing on the road that can be

less hypothetical than a fire truck. Its massive volume and elongated dimensions, its numerous chariot wheels, ponderous equipment, fiery color, screaming siren, clanging bells and flashing warning lights make it as conspicuous as a herd of trumpeting elephants on a rampage.

Maxson, the defendant truck's driver, knew that Welsh Road and Butler Pike formed a dangerous crossway. He testified that he saw one car proceeding east on Welsh Road before he arrived there. Despite defendant's counsel's argument that it would be impracticable for the driver of a fire truck to be prepared to slow down at an intersection, Maxson was actually slowing down to stop at Welsh Road: "Q. You say you were slowing down? A. I was slowing down, to stop. Q. To what? A. To stop. Q. To come to a stop? A. That is correct. Q. For what reason were you going to bring your truck to a stop? A. I have always figured no fire is worth getting killed over."

Maxson knew this was a dangerous intersection: "Q. Well, just tell us what was your intention or your purpose in stopping your truck at the Welsh Road intersection, or intending to stop it? A. Having lived in that section for many years, I know it is a very dangerous intersection. I wouldn't normally go through it without stopping. Q. Well, of course 'normally' is a word of some significance. Was this a normal or an abnormal situation? A. To me, it was a normal situation. I would have stopped. Q. Normal for a fire truck? A. Regardless."

What caused Maxson finally not to stop was the waving of a passenger on the bus which Maxson interpreted as an invitation for him to proceed. But this ambiguous hand waving was a very precarious assurance on which to move into a recognized danger. Maxson did not know the passenger, the passenger was in-

side the bus and could not be aware of traffic conditions on all sides of the bus. The jury could well have concluded that Maxson's statement that he relied on so vague and unreliable a signal to hurl his 18,000-pound fire truck into an admittedly perilous situation was of itself enough to constitute the recklessness which would make the defendant liable in damages for what happened.

The Pennsylvania cases cited by appellant's counsel are not applicable to the facts at bar because in all those cases the collision occurred between an emergency vehicle and a non-emergency vehicle. Here we have an entirely novel situation where both vehicles stand in a favored class, and since neither can have an advantage over the other, they must in effect lose their priority rights and be treated as normal vehicles, insofar as rights against each other are concerned. It would be quite strange to hold, as appellant's counsel argues that if two fire trucks "meet at an intersection they both have an equal right to be there, and if they happen to collide that is simply one of the risks involved in getting to a fire as fast as possible." The law is not so fatalistic as that. The object of a fire truck's journey is not merely to make a show of rushing to a fire, but actually to get there. If the driver is to ignore all elements of safety driving at breakneck speed through obviously imperilling hazards, he may not only kill others en route, but he may frustrate the whole object of the mission and not get there at all!

Appellant's counsel argues that the lower Court erred in granting a new trial because it should have, on the contrary, entered judgment n.o.v. He does not, however, ask that if we refuse judgment n.o.v. we should reverse the order for a new trial. The plaintiff made no objection to the new trial. Since we discover no abuse of discretion in the awarding of a new trial, that order will not be disturbed.

Affirmed.