**CITY OF AMARILLO, Petitioner,**

v.

**Erica Shae MARTIN, Respondent.**

No. 96–0123.

Supreme Court of Texas.

Argued Oct. 9, 1997.

Decided June 5, 1998.

Merril E. Nunn, Amarillo, for Petitioner.

Glynn C. Turquand, Brian Douglas Walters, San Antonio, for Respondent.

ENOCH, Justice, delivered the opinion of the Court, in which GONZALEZ, HECHT, OWEN, BAKER, ABBOTT, and HANKINSON, Justices, join.

Firefighter Brent Clark collided with two vehicles while driving a City of Amarillo fire truck on an emergency call. We must decide whether the City, Clark's employer, may be liable to Erica Martin, the driver of one of the other vehicles, for Clark's simple negligence. The trial court said yes. So did the court of appeals. 912 S.W.2d 349. However, we say no.

## I. Facts

Clark was driving the fire truck with warning lights and sirens operating when he approached an intersection. He reduced speed, but drove through the intersection against a red light. He then collided with two vehicles crossing the intersection, one of them Martin's. Martin sued the City for property damage, alleging that Clark negligently failed to maintain a proper lookout, to maintain a safe stopping distance, and to yield the right of way.

Following a bench trial, the trial court rendered judgment for Martin based on a conclusion of law that Clark had operated the fire truck negligently. The City appealed, arguing that emergency personnel are liable only for reckless conduct, and therefore, the City was entitled to immunity because the trial court found that Clark "was not acting in reckless disregard for the safety of others." The court of appeals affirmed, holding on rehearing that emergency personnel are liable for acts of mere negligence, and, therefore, that the trial court did not err. 912 S.W.2d at 353.

## II. Texas Tort Claims Act

■ Under the common-law doctrine of sovereign immunity, a municipality is immune from tort liability for its own acts or the acts of its agents unless the Texas Tort Claims Act waives immunity. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex.1994). The Tort Claims Act waives sovereign immunity for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission *or the negligence* of an employee acting within his scope of employment if:

(A) the property damage, personal injury or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law. . . .

TEX. CIV. PRAC. & REM.CODE § 101.021 (emphasis added). But, the Tort Claims Act includes an exception to this waiver:

This chapter does not apply to a claim arising:

. . .

(2) from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is [not] taken with conscious indifference or reckless disregard for the safety of others.[1]

*Id.* § 101.055.

■ At the outset, we note that the substantive law in effect at the time of the accident controls. *See, e.g., Sadler v. Sadler,* 769 S.W.2d 886, 886–87 (Tex.1989) (per curiam). Under emergency conditions, an emergency vehicle operator is entitled to various privileges. *See* TEX.REV.CIV. STAT. art. 6701d, § 24(b), *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1; 1995 Tex. Gen. Laws 1025 (current version at TEX. TRANSP. CODE § 546.001–.005). However, these privileges do "not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others." *Id.* § 24(e) (current version at TEX. TRANSP.

CODE § 546.005). In another section of article 6701d dealing with the duties of civilian drivers, the Legislature repeated that it did not intend "to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway." *Id.* § 75(b) (current version at TEX. TRANSP. CODE § 545.156(b)).

Because article 6701d controls Clark's action as an emergency vehicle operator in an emergency situation, we look to see if Clark complied with that article. Specifically, we review section 24(e) of article 6701d.

### III. Interpretation of Article 6701d, Section 24(e)

The court of appeals is not alone in struggling to understand section 24(e). The Legislature adopted section 24(e) from the Uniform Vehicle Code. Many other states have drafted statutes from the same model, and their courts have also struggled to understand what it means to say that an emergency vehicle driver should exercise due regard for others while responding to an emergency, but must face the consequences of reckless disregard for others.

Several courts have agreed with the court of appeals that provisions such as section 24(e) impose liability for mere negligence. *See Doran v. City of Madison,* 519 So.2d 1308, 1312–13 (Ala.1988); *Estate of Aten v. City of Tucson,* 169 Ariz. 147, 817 P.2d 951, 955 (1991); *City of Little Rock v. Weber,* 298

---

1. The final clause of subsection 2, imposing liability for recklessness as the default in case no other law or ordinance applies to the emergency action, figured prominently in the court of appeals' first opinion. 912 S.W.2d 349. As enacted in 1987, this clause actually provided that, in the absence of an emergency-action law or ordinance, sovereign immunity is retained "if the action is taken with conscious indifference or reckless disregard for the safety of others." Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 3.05, 1987 Tex. Gen Laws 51 (amended 1995). The original court of appeals opinion took this language literally and held that sovereign immunity was waived because of the trial court conclusion that Clark had not been reckless. This literal reading of the statute is patently absurd. The Legislature could not have intended to protect reckless driving. *See Bridgestone/Firestone, Inc. v. Glyn-Jones,* 878 S.W.2d 132, 135 (Tex.1994)

(Hecht, J., concurring) ("[I]n some circumstances, words, no matter how plain, will not be construed to cause a result the Legislature almost certainly could not have intended."); *id.* at 137 (Enoch, J., dissenting) ("*[U]nless application of a legislative enactment produces an absurd result,* I do not agree that we should simply rewrite a provision in order to achieve what we perceive to be the true intent of the legislature.") (emphasis added). The Legislature remedied the error in 1995 by amending the clause to retain sovereign immunity "if the action is *not* taken with conscious indifference or reckless disregard for the safety of others." *See* Act of May 9, 1995, 74th Leg., ch. 139, § 1, 1995 Tex. Gen. Laws 982. However, the pre-amendment version governs this case, so we have inserted the word "not" in brackets to indicate the obvious legislative intent.

Ark. 382, 767 S.W.2d 529, 533 (1989); *Barnes v. Toppin*, 482 A.2d 749, 755 (Del.1984); *City of Baltimore v. Fire Ins. Salvage Corps*, 219 Md. 75, 148 A.2d 444, 447 (1959); *City of Kalamazoo v. Priest*, 331 Mich. 43, 49 N.W.2d 52, 54 (1951); *Cairl v. City of St. Paul*, 268 N.W.2d 908, 912 (Minn.1978); *Wright v. City of Knoxville*, 898 S.W.2d 177, 179–80 (Tenn.1995); *Estate of Cavanaugh v. Andrade*, 202 Wis.2d 290, 550 N.W.2d 103, 114–15 (1996).

Many other courts also have imposed liability for mere negligence, but placed great emphasis on the circumstances of emergency action. *See Rutherford v. Alaska*, 605 P.2d 16, 18–19 & n. 5 (Alaska 1979); *Torres v. City of Los Angeles*, 58 Cal.2d 35, 22 Cal. Rptr. 866, 372 P.2d 906, 916 (1962); *Bouhl v. Smith*, 130 Ill.App.3d 1067, 86 Ill.Dec. 247, 475 N.E.2d 244, 246–47 (1985); *Belding v. Town of New Whiteland*, 622 N.E.2d 1291, 1293 (Ind.1993); *Thornton v. Shore*, 233 Kan. 737, 666 P.2d 655, 661 (1983); *Stenberg v. Neel*, 188 Mont. 333, 613 P.2d 1007, 1010 (1980); *Lee v. City of Omaha*, 209 Neb. 345, 307 N.W.2d 800, 803 (1981); *Fielder v. Jenkins*, 274 N.J.Super. 485, 644 A.2d 666, 668 (Ct.App.Div.1994); *Siburg v. Johnson*, 249 Or. 556, 439 P.2d 865, 870 (1968); *Brown v. Spokane County Fire Protection Dist. No. 1*, 100 Wash.2d 188, 668 P.2d 571, 574–76 (1983). Of course, a negligence inquiry always considers what a reasonably prudent person would do under the same or similar circumstances. *See, e.g., St. John v. Pope*, 901 S.W.2d 420, 423 (Tex.1995). Therefore, the emphasis these cases place on the emergency circumstances seems to indicate an intent to create a modified, heightened negligence threshold.

But, courts in Iowa, Louisiana, New York, Rhode Island, and Vermont have held that provisions such as section 24(e) only waive immunity for recklessness. *See Schatz v. Cutler*, 395 F.Supp. 271, 274 (D.Vt.1975) (interpreting the Vermont statute as imposing a recklessness, or "aggravated negligence," standard); *Morris v. Leaf*, 534 N.W.2d 388, 390 (Iowa 1995) (equating "due regard" with negligence generally, but concluding that it means recklessness in this context); *Smith v. Commercial Union Ins. Co.*, 609 So.2d 1024, 1027 (La.Ct.App.1992) ("The driver of an emergency vehicle can only be held liable for negligence to the degree that it constitutes reckless disregard for the safety of others."); *Saarinen v. Kerr*, 84 N.Y.2d 494, 620 N.Y.S.2d 297, 644 N.E.2d 988, 989 (1994); *Roberts v. Kettelle*, 116 R.I. 283, 356 A.2d 207, 213–14 (1976).

From our inquiry, it is evident that most courts have interpreted provisions such as section 24(e) to impose liability for negligence. However, as noted above, many of the courts simultaneously established a negligence standard, but went to great lengths to explain that negligence for emergency vehicle operators is not at all comparable to negligence for civilian drivers. *See, e.g., Thornton*, 666 P.2d at 661 (noting that one of the circumstances to be considered in the negligence inquiry is the emergency vehicle operator's right to assume that other drivers will yield). Ultimately, we fail to see how this modified-negligence inquiry is meaningfully different from the recklessness standard that we adopt today. More particularly, we believe that a recklessness standard provides a better-defined standard than "heightened negligence."

■ Furthermore, emergency vehicle operators and their governmental employers, in most states, are immune from suits based on negligence because the employees' official immunity is waived only for more culpable conduct, such as gross negligence, bad faith, or willful or wanton conduct. *See, e.g., Logue v. Wright*, 260 Ga. 206, 392 S.E.2d 235, 237 (1990); *Cooper v. Wade*, 218 Mich.App. 649, 554 N.W.2d 919, 923 (1996); *Creighton v. Conway*, 937 S.W.2d 247, 250–51 (Mo.Ct.App. 1996); *Canico v. Hurtado*, 144 N.J. 361, 676 A.2d 1083, 1085 (1996); *Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 653 N.E.2d 1186, 1188 (1995). Therefore, a substantial majority of states provide some form of immunity barring suit against governmental employers or employees based on negligent operation of emergency vehicles. Whatever form such immunity takes, the underlying policy is the same: to balance the safety of the public with the need for prompt responses to police, fire, and medical emergencies. In light of that need, and the privileges granted to

emergency vehicles, we hold that section 24(e) of article 6701d imposes liability for reckless operation of an emergency vehicle in an emergency situation. To recover damages resulting from the emergency operation of an emergency vehicle, a plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury. *See Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 326 (Tex.1993); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 34, at 213–14 (5th ed.1984) (defining the usual meaning assigned to "recklessness").

■ Basic principles of statutory construction disfavor the court of appeals' holding that the duty of "due regard" imposes liability for mere negligence. First, the court of appeals erred in focusing on the "due regard" phrase to the almost total exclusion of the "reckless disregard" phrase in the same sentence. Section 24(e) of article 6701d states that the privileges granted in that section do not relieve an emergency vehicle operator of "the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others." Tex.Rev.Civ. Stat. art. 6701d, § 24(e). Any construction of this section to impose a standard of care of less than recklessness would make the "reckless disregard" clause ineffectual surplusage.[2] Of course, we will give effect to all the words of a statute and not treat any statutory language as surplusage if possible. *See Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987); *Perkins v. State,* 367 S.W.2d 140, 146 (Tex.1963). It is entirely reasonable to read section 24(e) as containing both a cautionary warning to emergency vehicle operators to drive with due regard for others, considering the privileges they are granted, but also a statement that these operators will

answer in damages for the consequences of their reckless conduct.

Second, the Legislature specifically excluded operation of emergency vehicles in emergency situations from the general waiver of immunity for negligent operation of governmental vehicles. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.055(2). Were we to construe article 6701d to impose liability generally on emergency vehicle operators for mere negligence, we would render meaningless the portion of section 101.055 that specifically excludes emergency vehicle operators from the waiver of immunity for negligence.

Third, having liability predicated on reckless conduct better serves the public's interest in minimizing emergency response delays. We agree with the concerns expressed by the New York Court of Appeals in declining to interpret a provision similar to section 24(e) to impose liability for mere negligence:

As a practical matter, use of the undemanding ordinary negligence test—or even the more "flexible" common-law negligence test that is applied in emergency situations—would lead to judicial "second-guessing" of the many split-second decisions that are made in the field under highly pressured conditions. Further, the possibility of incurring civil liability for what amounts to a mere failure of judgment could deter emergency personnel from acting decisively and taking calculated risks in order to save life or property or to apprehend miscreants. The "reckless disregard" test, which requires a showing of more than a momentary judgment lapse, is better suited to the legislative goal of encouraging emergency personnel to act swiftly and resolutely while at the same time protecting the public's safety to the extent practicable.

*Saarinen,* 620 N.Y.S.2d 297, 644 N.E.2d at 992 (citations omitted). Using recklessness as the threshold for imposing liability is like-

---

2. The court of appeals considered it significant that section 75 of article 6701d repeats the "due regard" requirement but lacks the "reckless disregard" clause. *See* 912 S.W.2d at 353. Section 75 describes the duties of civilian drivers when approached by emergency vehicles, and therefore speaks to the duties of emergency vehicle operators only by implication. Section 24(e) is specifically directed to emergency vehicle operators and therefore controls. *See Holmes v. Morales,* 924 S.W.2d 920, 923 (Tex.1996) ("When two sections of an act apply, and one is general and the other is specific, the specific controls.").

wise consistent with the policy we announced in *Chambers,* to balance:

> "(1) the injustice ... of subjecting to liability [an emergency vehicle operator] who is required, by the legal obligations of his position, to exercise discretion; [and] (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good" [with] the rights of bystanders or other innocent parties if [the emergency vehicle operator] acts in *gross disregard* of public safety.

*Chambers,* 883 S.W.2d at 656 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)) (emphasis added).

We note that this Court has twice cited section 24(e) and discussed only its "due regard" prong, equating it with a negligence standard. *See Chambers,* 883 S.W.2d at 653; *Travis v. City of Mesquite,* 830 S.W.2d 94, 98–99 (Tex.1992). Our opinion today is consistent with both *Chambers* and *Travis.* We agree that section 24(e) imposes a *duty* to drive with due regard for others by avoiding negligent behavior, but it only imposes *liability* for reckless conduct.[3]

The dissent does not disagree with our conclusion that article 6701d, section 24(e) imposes liability only for reckless conduct. At 432. However, the dissent insists that recklessness is not a requisite for liability unless the conduct is specifically enumerated as a privilege in section 24. At 433. For all other conduct, the dissent would impose liability for mere negligence. The facts of this case show why the dissent's position is flawed. Clark, in fact, was proceeding through a red light when the accident occurred. Proceeding through a red light is a specifically enumerated privilege of emergency vehicles in emergency situations. *See* Tex.Rev.Civ. Stat. art. 6701d, § 24(c)(2) (repealed 1995) (current version at Tex. Transp. Code § 546.001(2)). Therefore, the dissent should conclude that Clark is insulated from liability for any conduct short of reckless-

ness. However, the dissent does not so conclude because Martin simply pleaded that Clark failed to keep a proper lookout rather than that he failed to stop at a red light. Surely, the Legislature did not intend for the availability of the statute's protection to turn on which words a litigant chooses.

Furthermore, we think that our reading of section 24 better comports with the Legislature's understanding of the emergency vehicle statute. Courts in other states have looked at the "due regard" clause that was taken from the same model act as section 24 and perfunctorily equated it with negligence. *See, e.g., Wright,* 898 S.W.2d at 180. In 1995, when the Legislature codified section 24 as section 546.005 of the new Transportation Code, it replaced the phrase "due regard":

> This chapter does not relieve the operator of an authorized emergency vehicle from:
>
> (1) the duty to operate the vehicle with *appropriate regard* for the safety of all persons; or
>
> (2) the consequences of reckless disregard for the safety of others.

Tex. Transp. Code § 546.005 (emphasis added). The Legislature's substitution of "appropriate regard" for "due regard" lends credence to our view that the Legislature intended for emergency vehicle operators in emergency situations to be cognizant of public safety, but only intended to impose liability for reckless conduct.

By imposing a double standard for liability, one for emergency vehicle operators in emergency situations and one for civilian drivers, the Legislature has placed a heavier burden on the civilian drivers. Several policy considerations support this heavier burden. First, emergency vehicle operators typically face more exigent circumstances than do civilian drivers. Emergency vehicle operators are charged with protecting the public's health, safety, and property, and a few minutes or even seconds can make the difference between life and death.

---

**3.** One amicus brief in *Chambers* and one supplemental brief on rehearing in *Travis* argued that section 24(e) imposed liability only for reckless conduct. All other arguments in both cases assumed that section 24(e) imposed liability for negligent conduct. In any event, today's opinion marks the first time that the Court has focused on and considered the meaning of both standards of care in section 24(e) as they relate to the Tort Claims Act's waiver of sovereign immunity.

Second, civilian drivers generally have an advantage when it comes to anticipating and preventing a collision. Under most circumstances, the lights, sirens, and distinctive coloring of an emergency vehicle make it stand out from the others; by contrast, the vehicle with which the emergency vehicle is on course to collide too easily blends in with the other traffic. We are aware of statistical data showing the frequency with which emergency vehicles, particularly police cars in hot pursuit of criminal suspects, are associated with injurious or fatal traffic accidents. *See Travis v. City of Mesquite*, 764 S.W.2d 576, 579 (Tex.App.—Dallas 1989) (Thomas, J., dissenting), *rev'd*, 830 S.W.2d 94 (Tex.1992). Some judges are influenced by such statistics, *see id.*, and perhaps they are, or should be, part of the legislative mix. But once the Legislature has made its policy choice by enacting the statute, this Court is constrained to interpret the statutory language, not to decide upon and implement its own policy choices based on legislative facts.

Third, emergency vehicle operators must routinely make risky judgment calls in emergency situations. It is unfortunate that some civilian drivers are less than vigilant in abiding by their duties to keep a lookout for and to yield to emergency vehicles, but emergency vehicle operators are entitled to presume that other drivers will respect emergency priorities.

## IV. Application and Conclusion

For Martin to prevail, she must assert *and* establish that she proved that Clark was reckless as a matter of law. Martin has done neither. In light of the trial court's unchallenged conclusion that Clark was not reckless, we reverse the court of appeals' judgment and render judgment for the City.

SPECTOR, J., filed a dissenting opinion, in which PHILLIPS, C.J., joined.

1. The majority also expresses concern about subjecting the government to liability in connection with emergency services. However, § 24(e) applies not only to public employees, but also to private ambulance drivers. *See* Act of May 20, 1953, 53rd Leg., R.S., ch. 297, § 1, 1953 Tex. Gen. Laws 749, 750 (formerly codified at Tex.Rev. Civ. Stat. Ann. art 6701d, § 2(d)), *repealed by* Act

SPECTOR, Justice, joined by PHILLIPS, Chief Justice, dissenting.

Under what circumstances does the driver of an emergency vehicle have a duty to drive with due regard for the safety of others as required by article 6701d, section 24(e) of the Revised Civil Statutes? The majority today answers never. I dissent.

Although canons of statutory construction require us to give effect to all the words of the statute if possible, *see* Tex. Gov't Code § 311.021(2); *Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex.1987), the majority frames this case as a choice between a pure negligence standard and a pure recklessness standard. There is no attempt to harmonize the apparent conflict between the "due regard" and "reckless disregard" clauses of section 24(e). Instead, the majority shields emergency vehicle drivers from liability for anything less than recklessness in order not to hamper their job performance.[1]

It is possible to give effect to both clauses of section 24(e) while still protecting emergency drivers' ability to perform their duties. I would hold that the reckless disregard standard applies to the specific activities that emergency vehicle drivers are privileged to perform under section 24(c) and the due regard standard applies to all other conduct.

The relevant subsections of section 24 in force at the time of the accident stated in full:

(b) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(c) The driver of an authorized emergency vehicle may:

of May 1, 1995, 74th Leg., R.S., ch. 165, § 24, 1995 Tex. Gen. Laws 1025, 1870–71 (current version at Tex. Transp. Code § 541.201(1)) (defining "authorized emergency vehicle"). Sovereign immunity considerations cannot justify exempting these private actors from liability for negligence, which is the effect of the majority's decision.

1. Park or stand, irrespective of the provisions of this chapter;

2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

3. Exceed the maximum speed limits so long as he does not endanger life or property;

4. Disregard regulations governing direction of movement or turning in specified directions.

(d) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals meeting the requirements of Section 124 of this Act, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

(e) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

Act of April 19, 1971, 62nd Leg., R.S., ch. 83, § 11, 1971 Tex. Gen. Laws 722, 727–28 (formerly codified at TEX.REV.CIV. STAT. ANN. art. 6701d, § 24(b)–(e)), *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 24, 1995 Tex. Gen. Laws 1025, 1870–71 (current version at TEX. TRANSP. CODE §§ 546.001–.005). Former section 24(e) has subsequently been revised to read:

This chapter does not relieve the operator of an authorized emergency vehicle from:

(1) the duty to operate the vehicle with appropriate regard for the safety of all persons; or

(2) the consequences of reckless disregard for the safety of others.

TEX. TRANSP. CODE § 546.005. By placing the two clauses concerning the driver's standard of liability in separate subsections rather than in a single sentence, the new version of the statute makes even clearer the Legislature's intent to give independent effect to each clause.

The quoted provisions of section 24 as a whole suggest a way to give effect to both the due regard and reckless disregard clauses of section 24(e). Subsection (b) grants emergency operators "the privileges set forth in this section," which are "subject to the conditions herein stated." Subsection (c) defines the acts of emergency drivers which are privileged and, by implication, which ones are not. Subsection (d) limits the privilege to drivers who use the required warning lights and sirens, but leaves unresolved the obvious issue of whether the privilege is absolute or limited by some requirement of care. Subsection (e) provides the answer to that question. It announces two standards of liability that correspond to the two categories of conduct—privileged and non-privileged—established by subsection (c). Privileged acts are protected from liability, but not if they are done recklessly; all other acts of emergency drivers are held only to a due regard or negligence standard.

This construction furthers the Legislature's decision to extend special protection to the conduct specified in section 24(c), and that conduct only. Each of the activities privileged by subsection (c), although potentially dangerous, deserves protection because it directly enhances the driver's ability to respond to the emergency call. The majority is correct that protecting those activities "serves the public's interest in minimizing emergency response delays." At 430.

The majority fails to recognize, however, that many other risky activities in which an emergency driver might engage do not serve this public interest and therefore should not be exempt from ordinary rules of liability. On the contrary, the public interest in prompt and effective emergency response makes it all the more important that emergency vehicle operators not be careless in these other aspects of their driving. As one of our sister courts has observed:

The object of a fire truck's journey is not merely to make a show of rushing to a fire, but actually to get there. If the driver is to ignore all elements of safety driving at breakneck speed through obviously imperilling hazards, he may not only kill others en route, but he may frustrate the whole

object of the mission and not get there at all!

*Horsham Fire Co. No. 1 v. Fort Wash. Fire Co. No. 1,* 383 Pa. 404, 119 A.2d 71, 75 (1956).

For example, the Legislature surely did not intend section 24 to relieve emergency vehicle operators of liability for negligence if they drive after having a few beers or while taking medication that slows their reaction time, or as happened in another case we decide today, if they fail to wear required corrective lenses. *See Kolster v. City of El Paso,* 972 S.W.2d 58 (Tex.1998). Unlike speeding and running red lights, this type of careless behavior does not contribute in any way to the driver's ability to reach the emergency scene quickly. Yet under the majority's holding, an injured bystander cannot recover from an emergency vehicle operator who causes an accident by engaging in such behavior unless the emergency driver was reckless. This expansion of section 24's narrowly drawn privilege is unwarranted both as a matter of statutory interpretation and as a matter of public policy.

The majority argues that a negligence standard is overly demanding given the exigent circumstances that emergency vehicle drivers face. But as courts in other states with similar statutes have long recognized, negligence is a relative concept. A proper negligence inquiry does not "measure [the conduct of emergency vehicle drivers] by exactly the same yardstick as the actions of the operators of conventional vehicles." *City of Baltimore v. Fire Ins. Salvage Corps,* 219 Md. 75, 148 A.2d 444, 448 (1959). Rather, the factfinder must determine whether the defendant's non-privileged conduct met the standard of a reasonable emergency vehicle driver in light of all the circumstances.[2]

Among the relevant circumstances are the legal privileges of emergency drivers and the corresponding duties imposed on the drivers around them. For example, because article 6701d, section 75(a) requires other drivers to pull over and yield when an emergency vehicle approaches, it is reasonable for an emergency driver to act on the assumption that other drivers will comply with the law and yield the right of way unless it becomes apparent that they will not or cannot do so. *See Brown v. Spokane County Fire Protection Dist. No. 1,* 100 Wash.2d 188, 668 P.2d 571, 575 (1983); *Shawnee Township Fire Dist. No. 1 v. Morgan,* 221 Kan. 271, 559 P.2d 1141, 1147 (1977). Similarly, although an emergency driver's failure to maintain a proper lookout is not privileged and therefore would be subject to a negligence standard, the relevant circumstances would include the fact that emergency drivers are privileged to travel at high speeds which reduces the time reasonably available for lookout. This negligence test respects emergency drivers' need to take risks and make split-second decisions without insulating them from responsibility when they fail to exercise "the degree of care and vigilance which circumstances reasonably impose." *City of Baltimore,* 148 A.2d at 448.

The Court's decision today frustrates the Legislature's intent to require due and appropriate care by emergency vehicle drivers. Serious accidents involving emergency vehicles continue to be a significant public safety problem in our state. For example, Texas ranks second nationwide in the number of persons killed in police chases, with 459 deaths since 1980. *See Deadly Pursuits,* PORTLAND OREGONIAN, Jan. 22, 1998, at D1 (citing statistics compiled by National Highway Transportation Safety Administration). This shocking figure does not include people killed by fire engines, ambulances, or police cars involved in emergencies other than the pursuit of suspects, nor does it include the much higher number of nonfatal injuries in collisions involving emergency vehicles. Contrary to the majority's suggestion, it is entirely appropriate for us to consider these facts. The Code Construction Act authorizes courts to take account of, among other things, the object sought to be attained by the statute, the circumstances under which it was enacted, and the consequences of a particular construction. TEX. GOV'T CODE § 311.023(1), (2), (5). The consequence of

---

2. This standard of conduct for emergency vehicles is in accord with the current version of § 24(e), which replaces the phrase "due regard" with "appropriate regard." TEX. TRANSP. CODE § 546.005.

construing § 24(e) as establishing only a recklessness standard will be to exacerbate the danger on our roads by removing any financial incentive for emergency drivers and their employers to exercise due regard for the safety of others.

Because this dissenting opinion articulates a new legal standard by which to judge the liability of emergency vehicle drivers, I would reverse and remand for a new trial in the interest of justice. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 657 (Tex.1994).