# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00416-CV

---

**City of Austin, Appellant**

**v.**

**Adam Sahyouni, Appellee**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-003909, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, the City of Austin appeals from the trial court's order denying the City's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). The City challenges the trial court's jurisdiction over Adam Sahyouni's claims concerning an automobile collision involving an Austin Police Department (APD) officer who was responding to an emergency and collided with Sahyouni's vehicle while turning at a high rate of speed. *See generally City of Austin v. Powell*, 704 S.W.3d 437 (Tex. 2024) (discussing emergency exception in Texas Tort Claims Act (TTCA)); *see also* Tex. Civ. Prac. & Rem. Code § 101.055(2). Following the Texas Supreme Court's directives in *Powell*, we reverse the trial court's order and render judgment dismissing the case for lack of subject-matter jurisdiction.[1]

---

[1] In August 2023, this Court granted the City of Austin's agreed motion to abate this appeal pending the Texas Supreme Court's resolution of *City of Austin v. Powell*, 704 S.W.3d 437 (Tex. 2024). The appeal was reinstated on December 31, 2024, the same day that the Texas Supreme Court issued its opinion and judgment in *Powell*. *See id.*

# BACKGROUND[2]

On October 27, 2019, around 10:00 p.m., Sahyouni was operating his vehicle, which was stopped at a red light, when the APD officer's patrol car collided with Sahyouni's vehicle. The officer was responding to an emergency call when he lost control of his patrol car and collided with Sahyouni's vehicle.

In July 2020, Sahyouni sued the City to recover personal-injury and property damages sustained in the collision.[3] In his first amended petition, Sahyouni alleged that the officer was negligent by (i) "failing to keep a proper lookout or such lookout, which a person of ordinary prudence would have maintained under same or similar circumstances"; (ii) "failing to timely apply the brakes of the vehicle in order to avoid the collision in question"; (iii) "operating the vehicle at a rate of speed that was greater than an ordinary prudent person would have driven under similar circumstances"; (iv) "failing to turn the vehicle in an effort to avoid the collision in question"; and (v) "failing to blow horn warning of imminent danger." Sahyouni also alleged that the officer was negligent per se because he failed to exercise the mandatory standards of care in Sections 545.103 and 545.351 of the Texas Transportation Code. *See* Tex. Transp. Code §§ 545.103 (addressing requirement for operator of vehicle to safely turn), .351 (addressing maximum speed requirement for operator of vehicle).

---

[2] The facts are taken from the pleadings and evidence that was before the trial court when it ruled on the City's plea to the jurisdiction.

[3] Sahyouni initially sued the City of Austin Police Department but amended his petition to name the City of Austin.

The City answered and filed a plea to the jurisdiction based on its governmental immunity and the emergency exception in the TTCA. *See* Tex. Civ. Prac. & Rem. Code § 101.055(2). The emergency exception in the TTCA provides:

> This chapter does not apply to a claim arising: . . . (2) from the action of an employee while responding to an emergency call or reacting to an emergency situation if the actor is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

*Id.*

The City supported its plea with evidence about the officer's actions leading up to the collision, which included a declaration by the officer involved in the collision, a declaration by a City employee who was a dispatcher on the night of the collision, and the "CAD Call Hardcopy report" and incident detail report concerning the collision.

The City's evidence established that the officer was responding to an emergency when the collision occurred. The City employee declared that the officer was dispatched to the "West Campus neighborhood" based on a 911 call that was classified as "Disturbance Hot Shot" and that a "Hot Shot call is the highest priority call and authorizes officers to respond Code 3 with lights and sirens." In his declaration, the officer similarly explained that he "was parked at House Park in the skate park area near West 12th Street and North Lamar Boulevard" when he "received a Hot Shot call from dispatch at 10:04 p.m. to the West Campus area regarding a disturbance." He explained that "'Disturbance' means there is a fight of some sort," and that "Hot shot" "means there is imminent danger to a person or property."

3

The officer also recounted his actions in response to the call leading up to the collision. He "activated [his] emergency lights and sirens and turned on North Lamar heading northbound," accelerating as he drove, and then described what happened:

6. I planned to enter the West Campus neighborhood by turning right (East) onto MLK. I do not recall the exact address of the disturbance, but I knew it was in the West Campus neighborhood and that Lamar to MLK was the fastest route. There is a dedicated right turn lane at the southeast intersection of Lamar and MLK with a triangle-shaped island separating the Lamar right-turn lane from the MLK eastbound traffic lane. The right turn lane is more of a sharp curve than a 90-degree angle and the lane merges with the eastbound lane after the turn.

7. I had my eyes on the road and was aware of the traffic conditions and presence of other vehicles.

8. As I prepared to make a right turn onto MLK, I estimate I was traveling at approximately 70 miles per hour. I moved into the inside northbound lane so I could take the turn at less of an angle. I applied my brakes and entered the turn lane, intending to slow to 30 miles per hour to take the turn.

9. As I braked the turn, my rear tires skidded on some gravel in the roadway causing the patrol car to slide into, then over the island. I continued to apply my brakes as I hit the island and attempted to steer the vehicle away from westbound traffic that was stopped at the light.

10. The front of my patrol car collided with the driver's side of a truck that was stopped at the red light on the other side of MLK.

11. Prior to the collision, I would drive this route to West Campus approximately two to three times over the course of a normal shift. Prior to this collision, I have taken this route on Hot Shot calls several times. I was very familiar with this particular turn.

12. I am trained to look for gravel on the roadway and did not see the gravel that caused me to skid.

13. I was driving as I was trained, within my capabilities, and with the appropriate attention and safety required under the circumstances.

4

Sahyouni filed a response to the City's plea with evidence, which included the officer's declaration and footage from his body camera.[4] Sahyouni contended that the City was not immune from suit under the TTCA because the officer's actions "were reckless and performed with conscious indifference and disregard for the safety of others" and that there was a fact issue whether the officer's "speeding caused or contributed to the injuries suffered by Plaintiff." *See id.* Sahyouni questioned the officer's decision to drive 70 mph "on the way to the emergency that was only 1.4 miles away" and asserted that the officer's actions were more than a "momentary judgment lapse." Based on the footage from the body camera, Sahyouni also asserted that "[the footage] does not appear to show a significant amount of de-acceleration that would imply that [the officer] reduced his speed by roughly 40 mph as stated in [his] Declaration" and that the footage did not show that the officer mentioned the gravel to other officers at the scene of the collision.

In his response, Sahyouni further asserted that (i) the officer "knew and did not care about the result of his precipitous action"; (ii) the officer was "driving much too quickly when trying to execute a right-hand turn"; (iii) the officer "knew that by traveling at roughly 2.3 times the posted speed limit of 30 mph, that serious injuries could result"; (iv) the officer "knew the sharp turn was approaching and instead of slowing down to an appropriate speed, he chose to make the turn at a high rate of speed despite knowing it could be dangerous to do so"; and (v) the officer

---

[4] In the clerk's record, it reflects a "DropBox Link for Video Exhibit," but the link is no longer operational and the footage from the officer's body camera is not otherwise in the appellate record. This Court requested that the parties file an agreed supplemental clerk's record containing this exhibit and other video exhibits discussed in the clerk's record but not included in the appellate record. *See* Tex. R. App. P. 34.5(c) (discussing supplementation of clerk's record). However, neither party responded to that request nor filed a supplemental clerk's record; thus, these video exhibits are not part of the appellate record.

"knew the risks of making a right turn at such a high rate of speed and yet continued to drive that fast anyways, which led to him losing control of his vehicle, careening over a median, and t-boning the Plaintiff's stopped vehicle, ultimately injur[ing] the Plaintiff."

The City filed a reply to the response with additional evidence, including the in-car video from the officer's patrol car and screen shots from the in-car video.[5] The City observed that Sahyouni did not dispute that the officer was responding to an emergency when the collision occurred and argued that the officer's declaration that he frequently travelled this particular route, had taken the same turn on prior Hot Shot calls, and did not see the gravel on the roadway that caused him to skid when he turned conclusively established that "his actions were not reckless."

The trial court denied the City's plea without explanation. This appeal followed.

## ANALYSIS

**Standard of Review**

A political subdivision of the State, such as the City, is protected from suit and liability by governmental immunity unless the Legislature has clearly and unambiguously waived it. *See City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 457 (Tex. 2020). Because governmental immunity implicates the trial court's subject-matter jurisdiction, it is properly raised in a plea to the jurisdiction. *Id.* A plaintiff must affirmatively demonstrate the trial court's jurisdiction over its claims against a political subdivision by showing that a statutory waiver of

---

[5] Although the City's brief includes pictures of the screen shots, we do not consider them because the in-car video and screen shots are not in the appellate record. *See Hammer v. Hammer*, No. 03-18-00715-CV, 2021 Tex. App. LEXIS 3740, at *4–5 (Tex. App.—Austin May 13, 2021, no pet.) (mem. op.) (explaining that appellate court's review of record is limited to appellate record provided); *see also* Tex. R. App. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record.").

immunity applies to its claims and negating provisions that create exceptions to the waiver. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865–66 (Tex. 2023). We review a trial court's ruling on a plea to the jurisdiction de novo. *City of Austin v. Quinlan*, 669 S.W.3d 813, 818 (Tex. 2023).

In its plea, the City challenged the existence of jurisdictional facts. When the government's plea challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue raised. *Powell*, 704 S.W.3d at 447 (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004)). When there is a dispute over jurisdictional facts concerning the applicability of the waiver of immunity, "the plaintiff must raise a genuine issue of material fact as to the immunity waiver's applicability." *Id.* at 448. "When that happens, 'we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor.'" *Id.* (citing *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528–29 (Tex. 2022)). "If the evidence raises a fact question as to the court's jurisdiction, then the trial court may not grant the plea." *Id.* (citing *University of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010)). "But the court must grant the plea if the evidence fails to raise a question as to the existence of a jurisdictional fact." *Id.* (citing *Maspero*, 640 S.W.3d at 529).

**Emergency Exception in TTCA**

In its sole issue on appeal, the City argues that the trial court erred in denying its plea to the jurisdiction because the City retains governmental immunity from Sahyouni's claims based on the emergency exception in the TTCA. *See* Tex. Civ. Prac. & Rem. Code § 101.055(2).

7

Although the TTCA generally waives the City's immunity for certain torts, "it 'withdraws' the waiver in various circumstances." *Powell*, 704 S.W.3d at 448–49 (citing *Rattray*, 662 S.W.3d at 866). "As relevant here, if an injury arises from an officer's response to an emergency call or reaction to an emergency situation, the [TTCA] withdraws the waiver of immunity *unless* (1) the officer did not comply with 'the laws and ordinances applicable to emergency action,' or (2) in the absence of such laws, the officer acted 'with conscious indifference or reckless disregard for the safety of others.'" *Id.* at 449 (quoting Tex. Civ. Prac. & Rem. Code § 101.055(2)); *see also City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex. 2006) (explaining as to TTCA's emergency exception, that legislature has determined "that the public good will be better served by encouraging public employees to take immediate action in emergency situations").

In *Powell*, the Texas Supreme Court recently addressed and applied the TTCA's emergency exception to conclude that the City maintained its immunity from claims analogous to those brought by Sahyouni against the City. *See* 704 S.W.3d at 445. In that case, the claims arose from an automobile collision when an officer "on a high-speed chase" lost control of his vehicle while he was turning and collided with a vehicle stopped at an intersection. *Id.* The court determined that the emergency exception applied because the officer "was at most negligent but not reckless." *See id.* at 462.

In reaching this determination, the court explained that the emergency exception contemplates "two distinct inquires to be undertaken in a particular order." *Id.* at 449. "First, the court must assess whether any laws or ordinances apply to the emergency action at issue in the case." *Id.* When there is an applicable law or ordinance, "the jurisdictional inquiry turns on whether the officer's action complied with the relevant law or ordinance." *Id.* (citing *City of*

8

*Amarillo v. Martin*, 971 S.W.2d 426, 428 (Tex. 1998)). "The second inquiry is triggered only if no law or ordinance governs the emergency action at issue or any part of it." *Id.* "The jurisdictional inquiry would then become whether there is a fact issue as to that officer's recklessness in undertaking the action that led to the injury; any conduct that complied with an applicable law or ordinance would not be subject to that analysis." *Id.* Further, "while statutes that *specifically govern* emergency action are relevant where a plaintiff attacks governmental immunity in the emergency context, generally applicable traffic rules are not." *Id.* at 452.

In that case, the Court first determined that the officer's actions were not governed by laws or ordinances applicable to emergency action and thus turned to the second inquiry. *See id.* at 456. The Court described the second inquiry to be "whether the officer 'knew or should have known' that [his] act posed an unacceptable risk of injury." *Id.* (quoting *Maspero*, 640 S.W.3d at 531); *see id.* (explaining that case law "seems to read Subsection 101.055(2) as bifurcated between the officer-specific subjective awareness (what the officer knew) and the hypothetical objective (what the officer should have known)" but observing that distinction unlikely to make difference). In resolving the second inquiry to conclude that the City was immune from the plaintiff's claims, the Court explained that the officer's state of mind is generally inferred "from the circumstances of his actions" and that courts should consider evidence that the officer "'engaged in some degree of risk assessment'" and "intend[ed] to minimize potential harm." *Id.* (quoting *Maspero*, 640 S.W.3d at 532). The Court further referred to its precedent stating that "conscious indifference or reckless disregard 'require[s] proof that a party *knew* the relevant facts but did not care about the result.'" *Id.* (quoting *Hartman*, 201 S.W.3d at 672 n.19).

Turning to this case, it is undisputed that the officer was responding to an emergency when the automobile collision occurred. Following the Texas Supreme Court's

9

directives then, we first consider whether Sahyouni alleged that the officer did not comply with "the laws and ordinances applicable to emergency action." *See id.* at 449; *see also* Tex. Civ. Prac. & Rem. Code § 101.055(2). In his live petition, Sahyouni alleged that the officer was negligent per se because he failed to exercise the mandatory standards of care in Sections 545.103 and 545.351 of the Texas Transportation Code. *See* Tex. Transp. Code §§ 545.103, .351. Those two provisions, however, are "generally applicable traffic rules" that do not apply specifically to an emergency action. *Powell*, 704 S.W.3d at 452. As the court explained in *Powell*, except for two provisions that are not alleged by Sahyouni here,[6] provisions in Chapter 545 of the Texas Transportation Code "do not regulate emergency responses." *Id.* at 453 (identifying "two provisions that *expressly* apply to emergency-response situations" in Chapter 545 and concluding that Subsection 545.062(a), which requires operator of motor vehicle to maintain safe distance between two vehicles, is "law of general applicability that is not specifically 'applicable to emergency action' under § 101.055(2) of [TTCA]"). Thus, we conclude that Sahyouni did not affirmatively establish the waiver of the City's immunity by alleging or showing that the officer failed to comply with "the laws and ordinances applicable to emergency action." *See id.* at 449.

We turn then to the second inquiry—whether the officer "acted 'with conscious indifference or reckless disregard for the safety of others.'" *See id.* The parties do not argue that there is a distinction between recklessness and "conscious indifference or reckless disregard for the safety of others." *See id.* at 449, 456 (applying precedents concerning recklessness and assuming for purposes of case that there is no difference between "conscious indifference or

---

**6** *See* Tex. Transp. Code §§ 545.365(a)(1) (authorizing emergency vehicles to exceed the speed limit when responding to emergency calls), .204(b) (noting that emergency-vehicle operators are not exempt "from the duty to drive with due regard for the safety of all persons").

reckless disregard for the safety of others" and recklessness because no party raised distinction). For purposes of our analysis then, the jurisdictional question becomes whether there is a fact issue as to the officer's recklessness. *See id.* Relevant to resolving this question is the "factual context of the [officer's] action." *Id.* at 457; *see id.* (observing that "risk assessment must be 'based on the officer's perception of the facts at the time of the event'").

In his first amended petition, Sahyouni alleged that the officer was negligent by (i) "failing to keep a proper lookout or such lookout, which a person of ordinary prudence would have maintained under same or similar circumstances," (ii) "failing to timely apply the brakes of the vehicle in order to avoid the collision in question," (iii) "operating the vehicle at a rate of speed that was greater than an ordinary prudent person would have driven under similar circumstances," (iv) "failing to turn the vehicle in an effort to avoid the collision in question," and (v) "failing to blow horn warning of imminent danger." But "[r]ecklessness requires more" than allegations of negligence. *Id.* at 460; *see Martin*, 971 S.W.2d at 430 (explaining that "'reckless disregard' test" is not satisfied with proof of "ordinary negligence" and that it requires more than showing "momentary judgment lapse").

In his response to the City's plea, Sahyouni contended that the officer's speed created a fact issue as to whether he had acted recklessly with disregard to the safety of others. Faced with a similar contention in *Powell*, the Texas Supreme Court concluded that the officer's failure to control his speed in that case did not create a fact issue as to recklessness. *Id.* at 458. The court observed that Subsection 546.001(3) of the Texas Transportation Code expressly authorizes officers "to exceed the speed limit when responding to emergency situations as long as they do not endanger life or property." *Id.* (citing Tex. Transp. Code § 546.001(3)); *see also* Tex. Transp. Code § 545.365(a)(1) (stating that municipal regulation of speed of vehicle under

11

subchapter does not apply to authorized emergency vehicle responding to call). Although there was evidence in *Powell* that the officer's failure to control his speed was a contributing factor to the accident, the court explained that (i) "vague descriptions of a high rate of speed 'lack specificity' and by themselves do not 'support a finding of reckless disregard,'" 704 S.W.3d at 458 (quoting *City of Houston v. Green*, 672 S.W.3d 27, 31 (Tex. 2023)); (ii) "even if *some* exceedingly high rate of speed could amount to recklessness, evidence of the actual speeds involved would be necessary to make such a showing," *id.*; and (iii) "in the context of a pursuit, there could be a question only of negligence—a momentary lapse in judgment"—but that "[m]omentary lapses in judgment are not grounds for finding recklessness," *id.* (citing *Maspero*, 640 S.W.3d at 531).

As was the case in *Powell*, Sahyouni did not present evidence of the actual speed that the officer was travelling when the collision occurred. *See id.* The City's evidence was that the officer was dispatched based on a "Disturbance Hot Shot," which is the highest priority classification, and in his declaration, the officer estimated that his speed was 70 mph but that he braked when attempting to take the right-hand turn, estimating that he slowed to approximately 30 mph to complete the turn. *See Maspero*, 640 S.W.3d at 532 (concluding that officer's speeding earlier in chase was not relevant to recklessness analysis when officer had slowed down before collision).[7]

Further, taking the evidence favorable to Sahyouni as true and indulging every reasonable inference and resolving any doubts in his favor, we conclude that the evidence supports at most that the officer had a momentary lapse in judgment and acted negligently. *See Powell*,

---

[7] In its brief, the City contends that the footage from the officer's in-car video supports that the officer had decreased his speed at the time of the collision and includes screen shots from the footage. As we previously stated, we do not consider the screen shots or video footage in our analysis because they are not in the appellate record.

704 S.W.3d at 448. And the evidence also showed that the officer "engaged in some degree of risk assessment'" and "demonstrated some intent to minimize potential harm." *See id.* at 456; *Maspero*, 640 S.W.3d at 532 (considering evidence that officer "engaged in some degree of risk assessment'" and "demonstrated some intent to minimize potential harm"). After being dispatched to respond to the emergency, the officer activated his lights and sirens; the route that he took was one that he had driven many times, including when responding to previous "Hot Shot calls"; he was attentive to "the traffic conditions and presence of other vehicles"; he was "very familiar with this particular turn" but did not see the gravel on the road that night "that caused [him] to skid"; and he continued to brake and attempted to steer into the turn but was unable to avoid the island, crossed over it, and collided with Sahyouni's vehicle.

Viewing the evidence under the applicable standard of review, we conclude that it did not create a fact issue as to the officer's recklessness in undertaking the action that led to the injury. *See Powell*, 704 S.W.3d at 448. While, unlike *Powell*, there is evidence in the record of the officer's estimated speed at the time of the collision here, "deeming speed in and of itself to raise a fact question about recklessness in such cases would be exceptional," *id.* at 458, particularly absent evidence that the officer's actions "generated an extreme risk beyond that which is inherent in high-speed pursuits," *id.* at 456 (cleaned up). And by braking and attempting to steer into the turn after the car began skidding, the officer demonstrated an attempt to minimize potential harm. *See Maspero*, 640 S.W.3d at 532. On this record, we cannot conclude that any evidence is sufficient to raise a fact question that the officer consciously disregarded others' safety by driving too quickly under these circumstances. *See Powell*, 704 S.W.3d at 458.

Following the Texas Supreme Court's directives and analysis in *Powell*, we conclude that Sayhouni did not affirmatively demonstrate that the City's immunity to his claims

13

was waived under the TTCA because he has not negated the emergency exception as applied to his claims. *See id.* at 448, 462; *see also Rattray*, 662 S.W.3d at 865–66. Thus, we conclude that the trial court did not have jurisdiction over Sayhouni's claims and that it erred when it denied the City's plea to the jurisdiction.

## CONCLUSION

For these reasons, we sustain the City's issue, reverse the trial court's order denying the City's plea to the jurisdiction, and render judgment dismissing the case for lack of subject-matter jurisdiction.

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Theofanis, and Crump

Reversed and Rendered

Filed:  January 30, 2026

14