# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00759-CV

**Donald Warren Gwynn and San Marcos/Hays County E.M.S., Appellants**

**v.**

**Jacque Tobin and Timothy Tobin, Individually and as Next Friends of B. T. and D. T., Minors, Appellees**

---

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT NO. 2000-0743, HONORABLE CHARLES RAMSAY, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellants Donald Warren Gwynn and San Marcos/Hays County E.M.S. appeal from the district court's denial of their motion for summary judgment. Appellees Jacque Tobin and Timothy Tobin, individually and as next friends of minors B.T. and D.T., sue for damages resulting from a collision between appellants' ambulance and the Tobins' sport-utility vehicle. Appellants contend that the district court erred by not granting their motion for summary judgment because they proved as a matter of law all elements of their affirmative defenses of official immunity and sovereign immunity. Appellants also contend that the Tobins presented no evidence of recklessness or violation of applicable laws and ordinances by appellants. We will affirm the order.

Gwynn was a paramedic for San Marcos/Hays County E.M.S. who drove the ambulance that struck the side of the Tobins' Suburban, causing it to flip upside down. The factual disputes concern how fast the ambulance was traveling and whether it had its emergency lights and sirens on. The issues on appeal concern whether the parties with the burdens of proof satisfied those burdens with respect to appellants' claims of official and sovereign immunity.

## STANDARDS OF REVIEW

Appellants' motion for summary judgment included traditional and no-evidence aspects. *See* Tex. R. Civ. P. 166a. A trial court may grant summary judgment under either theory only if the record reveals no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See id*. 166a(c), (i). Parties who file a traditional motion for summary judgment on an affirmative defense are entitled to summary judgment if they prove all essential elements of their defense as a matter of law. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If the movants establish their right to summary judgment, the nonmovant must present evidence that prevents a summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Parties may also obtain summary judgment after sufficient time for discovery by filing a motion alleging that there is no evidence of one or more essential elements on which the nonmovant would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i). The court must grant the motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements. *See id*.; *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.); *see also Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000).

The same standard governs review of the denial of a motion for summary judgment as governs review of a summary judgment.[1] *American Broadcasting Cos., Inc. v. Gill*, 6 S.W.3d 19, 27 (Tex. App.—San Antonio 1999, pet. denied).  When reviewing an order on a motion for summary judgment, we will take as true all evidence favorable to the nonmovant and will resolve every doubt and indulge every reasonable inference in the nonmovant's favor.  *Texas Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex. 2002); *Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.).  We will reverse an order denying a traditional motion for summary judgment and render judgment in the movant's favor only if the evidence establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law on a ground set forth in the motion.  *Gill*, 6 S.W.3d at 27; *see also* Tex. R. Civ. P. 166a(c).  We will reverse an order denying a no-evidence motion for summary judgment and render judgment in the movant's favor only if the respondent fails to produce evidence raising a genuine issue of material fact on each challenged element.  *See Gill*, 6 S.W.3d at 27; *see also* Tex. R. Civ. P. 166a(i).

---

[1] Ordinarily, an appeal may be taken only from a final judgment.  *City of Houston v. Kilburn*, 849 S.W.2d 810, 811 (Tex. 1993).  Although the denial of a motion for summary judgment is not a final judgment, "[a] person may appeal from an interlocutory order of a district court, county court at law, or county court that . . . denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state." *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) (West Supp. 2003).  We also have jurisdiction to review the denial of a motion by a governmental entity for summary judgment based on the entity's claim of immunity derived from its employee's claim of immunity.  *See Kilburn*, 849 S.W.2d at 812.

**OFFICIAL IMMUNITY**

By their first point of error, appellants contend that the district court erred by denying their motion for summary judgment based on Gwynn's official immunity. They contend they proved every element of Gwynn's entitlement to official immunity as a matter of law. Official immunity is an affirmative defense that protects government employees from personal liability. *University of Houston v. Thomas*, 38 S.W.3d 578, 580 (Tex. 2000). An emergency services organization is a governmental unit within the scope of the Texas Tort Claims Act. Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(C) (West Supp. 2003). A government employee is entitled to official immunity for the performance of discretionary duties within the scope of the employee's authority if the employee acts in good faith. *Thomas*, 38 S.W.3d at 580. When official immunity shields a government employee from liability, sovereign immunity shields a government employer from vicarious liability. *Id*. On appeal, the Tobins do not dispute that Gwynn acted within the scope of his authority, but argue that a fact question exists regarding whether he was performing a discretionary duty and whether he acted in good faith.

Whether an officer's action meets the "good faith" requirement depends on how a reasonably prudent officer could have assessed both the need to which an officer responds and the risks of the officer's course of action, based on the officer's perception of the facts at the time of the event. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997); *see also Rivas v. City of Houston*, 17 S.W.3d 23, 27 (Tex. App.—Houston [14th Dist.] 2000), *supp. op. on reh'g*, 19 S.W.3d 901 (2000, pet. denied). In the context of an emergency response, need is determined by factors such as the seriousness of the situation to which the official responds and what alternative courses of

4

action, if any, are available to achieve a comparable result. *See Wadewitz*, 951 S.W.2d at 467; *Rivas*, 17 S.W.3d at 27. Risk refers to the countervailing public safety concerns: the nature and severity of harm that the official's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officials from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent official. *See Wadewitz*, 951 S.W.2d at 467; *Rivas*, 17 S.W.3d at 27. To counter an emergency vehicle driver's proof that his actions were necessary, the injured bystander must prove that no reasonable person in the driver's position could have thought the facts justified his acts. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 656-57 (Tex. 1994).

Appellants introduced affidavits and deposition testimony to support their motion. Gwynn avers that, at the time of the accident, he was responding to an emergency call. He states that he activated the lights and sirens and drove west on East Hopkins. He slowed when he approached the intersection of Hopkins with the access road of Interstate Highway 35 because his light was red and there was traffic backed up on the three-lane access road. The first two lanes stopped with several vehicles in line, and the third appeared empty. He slowed to a rolling stop, did not see any oncoming traffic, consulted his coworker and passenger, Bronwyn Johnson, who also did not see any oncoming traffic, and began to accelerate through the intersection. Gwynn said he definitely removed his foot from the brake and may have placed it on the accelerator. He then saw the Tobins' vehicle enter the intersection at perhaps forty-five miles per hour, at which time he removed his foot from the accelerator but did not have time to brake. He said that the collision caused the Suburban to go "mostly in the air" (with the possible exception of the right front tire), apparently hit the curb,

5

and come to rest upside down. He said that the collision did not even create a hard pull on the safety belts in the ambulance. Johnson confirmed Gwynn's version of events, including his assertions that the lights and sirens were activated, that he all but stopped in the intersection before crossing the third lane, that no traffic was apparent in the third lane, and that the Tobins were driving fast. Johnson also stated that the dispatcher requested that they use lights and sirens when responding to this call. This evidence, if uncontradicted, might entitle appellants to summary judgment.

But the evidence was contradicted. There was evidence that the call to which Gwynn responded was not highly urgent. Johnson wrote in her report that the individual had been hit in the face by a fist and suffered a golf ball-sized contusion below his left eye; after the Tobins' accident diverted Gwynn and another emergency responder, the bruised individual chose to go to the emergency room in a private vehicle. There is also evidence that other emergency personnel were already at the scene with the bruised individual. It is not clear when the EMS crew learned the nature of the call, but the report indicates a question regarding the urgency of the need for their presence. There is also evidence regarding the risk. Appellants acknowledge by their sworn testimony regarding the crew's caution that crossing an access road against traffic signals is risky. The Tobins' sworn testimony indicates that the crew heightened the risk by not using their emergency sirens and lights. Both Tobins testified that they were unaware of the ambulance's approach until just before the collision. Jacque Tobin testified that she did not see the ambulance until just before they entered the intersection, indicating that it was not stopped in the intersection as they approached. She speculated, based on the sound, feel, and result of the impact, that the

6

ambulance was moving fairly fast, although she admitted that she did not know whether a low-speed collision could have caused the Suburban to flip.

Appellants attack Jacque Tobin's testimony as inconsistent. In her deposition, she agreed that her failure to hear the sirens and see the lights did not mean that they were not activated. After reviewing the deposition, she clarified her testimony by stating, "I do remember specifically, I did not hear any siren from any ambulance." The clarified statement is reconcilable with the testimony. Her specific memory of not hearing sirens still does not rule out the possibility that they were on. But her refusal to rule out the possibility that she is wrong does not change the fact that she believes that the sirens and lights were not activated.

Appellants also argue that the Tobins' failure to recall sirens and lights is irrelevant because appellants had the discretion not to use the emergency signals. But, while the failure to use the signals may not bear on appellants' discretion to use the signals, it pertains to the degree of risk that the ambulance could hurt someone by driving contrary to the traffic light.

We conclude that the evidence shows a genuine issue of material fact concerning whether Gwynn acted in good faith. Appellants' evidence indicates that he did, but that is not dispositive on summary judgment. There is evidence in the record that the need for appellants' presence was not urgent—the injury was not severe and other personnel were on the scene; thus, the need to pass through the intersection against the light may not have been great. The countervailing risk is apparent even in Gwynn's testimony regarding the caution he says he exercised in crossing the intersection against the light. The restricted sight lines caused by the density of traffic, the forty-five mile per hour speed limit for the cross traffic, and the signals indicating that the access road had

the right of way combine to heighten the risk of crossing against the light—particularly if, as the Tobins aver, the ambulance's warning lights and sirens were not activated. The density of traffic indicates that an accident is likely, the potential harm from a collision is great, and these risks would be clear to a reasonably prudent official. The court did not err by concluding that appellants failed to show the absence of genuine issues of material fact concerning every element of their affirmative defense of official immunity. *See* Tex. R. Civ. P. 166a(c); *Centeq Realty*, 899 S.W.2d at 197.

## SOVEREIGN IMMUNITY

By their second and third issues on appeal, appellants contend that the district court erred by denying their motion for summary judgment based on sovereign immunity. In addition to the vicarious immunity from Gwynn's official immunity, appellants claim the absence of a waiver of immunity from actions by emergency personnel responding to an emergency. They contend that no evidence shows that Gwynn violated any law or ordinance, acted with conscious disregard or recklessness, or engaged in conduct he should have known posed a high degree of risk or injury.

Sovereign immunity shields governmental entities from suit and liability for its actions and those of its agents unless immunity is expressly waived. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex. 1998). The legislature has waived immunity for property damage and personal injury caused by the wrongful act or omission or the negligence of an employee acting within the scope of governmental employ if the damage or injury arises from the operation or use of a motor-driven vehicle and the employee would be personally liable under Texas law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1) (West 1997). There is, however, no waiver of sovereign immunity if the claim arises

8

from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

*See id*. § 101.055(2). The operator of an authorized emergency vehicle may proceed past a red or stop signal after slowing as necessary for safe operation. *See* Tex. Transp. Code Ann. § 546.001(2) (West 1999). The operator of an authorized emergency vehicle may use "audible or visual signals" at the discretion of the operator in accordance with policies of the department or the local government that employs the operator. *See id*. § 546.003 (West 1999). The supreme court has concluded that immunity is waived for reckless operation of an emergency vehicle in emergency situations. *Martin*, 971 S.W.2d at 430. A plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury. *Id*.

Appellants contend that their evidence establishes entitlement to sovereign immunity. They produced evidence that Gwynn was responding to an emergency call in an authorized emergency vehicle that he operated in compliance with the statutes allowing him to go through an intersection against the traffic signals after slowing as necessary for safety. They also produced evidence that Gwynn drove carefully and thus was not consciously indifferent or reckless.

But the appellees adduced contravening evidence. Jacque Tobin testified that she did not see the ambulance until just before they entered the intersection, indicating that it was not stopped in the intersection as they approached. This—combined with the sound, feel, and result of the impact—indicated to her that the ambulance was moving fairly fast when it hit the Tobins' vehicle. This is some evidence showing a fact issue exists regarding whether the ambulance

9

complied with statutes and slowed "as necessary" before proceeding through the intersection. *See* Tex. Transp. Code Ann. § 546.001(2). This evidence, combined with the visual obstructions by the dense traffic and the Tobins' evidence indicating that the ambulance's sirens and emergency lights were not activated, is some evidence showing a fact issue exists regarding whether Gwynn acted with conscious indifference or reckless disregard to the risk of driving through an intersection against the traffic signals. The district court did not err by denying the motion for summary judgment based on sovereign immunity.

## CONCLUSION

The record reveals genuine issues of material fact that prevent summary judgment on the immunity defenses. This opinion should not be construed to hold that Gwynn acted in bad faith, with conscious indifference, or recklessly or that appellants are, as a matter of law, subject to liability. We conclude only that the district court did not err by denying appellants' motion for summary judgment on the immunity defenses.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: July 11, 2003

10