Affirmed and Opinion filed October 1, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00531-CV

____________

 

CITY OF PASADENA, TEXAS, Appellant

 

v.

 

STEVEN BELLE and JAMES WEST, Appellees

 



 

On Appeal from the
61st District Court

Harris County,
Texas

Trial Court Cause
No. 2006-65383

 



 

O P I N I
O N








This interlocutory appeal[1]
arises from the trial court=s denial of a plea to the jurisdiction filed by appellant,
the City of Pasadena.  Appellant asserts governmental immunity from a
personal-injury lawsuit involving a Pasadena police officer who was involved in
an automobile collision while responding to an emergency dispatch.  The driver
of the other vehicle, appellee James West, contends that Pasadena=s immunity is waived because its
employee, Officer Martin Hoffman, drove recklessly and did not act in good
faith by speeding without activating his patrol car=s emergency lights or siren.

Under current Texas law, Pasadena has not conclusively
established its immunity from suit.  Accordingly, we must affirm the trial
court=s order denying Pasadena=s plea to the jurisdiction.

                                                                             I.

                                                      Standard of Review

We review a trial court=s ruling on a plea to the
jurisdiction de novo.  Tex. Dep=t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004).  A
defendant=s jurisdictional plea may challenge either the plaintiff=s pleadings or the existence of
jurisdictional facts.  See id. at 226B28.  When, as here, the defendant
challenges the existence of jurisdictional facts, we must consider the relevant
evidence submitted by the parties.  See id. at 227.  If that evidence
raises a fact issue as to jurisdiction, the defendant=s plea must be denied because the
issue must be resolved by the trier of fact.  See id. at 227B28.  However, if the relevant
evidence is undisputed or fails to present a jurisdictional fact issue, the
plea should be granted as a matter of law.  Id. at 228.  In reviewing
the evidence, we are required to assume the truth of all evidence that favors
the nonmovant, in this case, the plaintiff-appellee.  See id.

                                                                            II.

                                                               Background








The automobile collision occurred on the morning of March 4,
2006 on Strawberry Road, a north-south street with two lanes traveling in each
direction and a center turning lane.  Hoffman, who was on patrol duty, was
driving southbound on Strawberry when he received a police dispatch about a
possible hostage situation taking place at a residence roughly one and one-half
miles away from his current position.  

After four other units had already accepted the assignment,
Hoffman alerted the dispatcher that he was also available to respond to the
emergency call.  The first two response units were designated as Aprimary personnel,@ while Hoffman, the fifth responder,
was assigned to serve in the role of Asupporting personnel@ as the third backup unit.  

These designations apparently control the manner in which
each unit is authorized to respond to an emergency call, according to the
Pasadena Police Department=s written policy and procedure manual.  Thus, although
primary personnel may respond to certain calls as AEmergency Traffic@ by disregarding some traffic
regulations, including posted speed limits, supporting personnel apparently do
not enjoy the same privileges.  Instead, Hoffman, as supporting personnel, was
required to Arespond in a fashion consistent with normal driving practices@ or specifically notify the police
dispatcher that he intended to deploy AEmergency Traffic@ with the same rights as primary
personnel.

Hoffman later testified that, because of his relative
proximity to the crime scene, he believed he might be the first officer to
arrive.  Therefore, notwithstanding the restrictions apparently placed on him
as Asupporting personnel,@ he accelerated to a speed of almost
twice the posted 35-mile-per-hour speed limit.[2] 
However, he did not activate his vehicle=s emergency lights or siren,
allegedly in violation of the following department policy:








The PPD recognizes that police response to certain
types of offenses . . . may warrant rapid intervention without the use of
audible and visual devices in order to achieve a tactical advantage . . . .  In
the event that a police officer elects to respond to an emergency call without
the full and continuous utilization of both visual and audible vehicular
warning devices, he must notify the Channel One police dispatcher who shall log
the notification in the Computer Aided Dispatch System.  In every case of this
nature, the responding officer must be prepared to fully justify his actions.

 

The dispatch log reflects no such notification by Hoffman of his intent
to proceed without activating his emergency lights or siren.

West, who had been driving northbound on Strawberry, was
situated in the center turning lane.  Having seen Hoffman=s vehicle stopped at a red light,
West believed he had adequate time to complete his left turn into a shopping
center.  However, because Hoffman did not utilize his lights or siren, West
claims he was unaware that Hoffman had resumed driving and had accelerated to
almost twice the posted speed limit.  West executed a slow left turn in front
of Hoffman, and the two vehicles collided.

Appellee Steven Belle, a passenger in West=s car, sued Pasadena, West, and
Hoffman for injuries allegedly sustained in the collision.  West filed a
cross-claim against Pasadena and Hoffman, and they likewise cross-claimed
against him.  Pasadena filed a plea to the jurisdiction contesting the
existence of facts demonstrating the trial court=s subject-matter jurisdiction to hear
the lawsuit.  The trial court denied Pasadena=s plea without explaining its
reasoning, leading to this interlocutory appeal.

                                                                           III.

                                                 Pasadena=s
Contentions

The City of Pasadena, as a municipality and political
subdivision of the State, cannot be liable for its employees= acts unless its governmental
immunity has been waived.  See City of Lancaster v. Chambers, 883 S.W.2d
650, 658 (Tex. 1994).  Here, the parties agree that Pasadena=s entitlement to immunity is governed
by Section 101.021 of the Texas Tort Claims Act (the ATTCA@), which provides:








A governmental unit in the state is liable for . . .
property damage, personal injury, and death proximately caused by the wrongful
act or omission or the negligence of an employee acting within his scope of
employment if:

(A)      the property damage, personal
injury, or death arises from the operation or use of a motor-driven vehicle or
motor-driven equipment; and

(B)      the employee would be
personally liable to the claimant according to Texas law[.]

 

Tex. Civ. Prac. & Rem. Code Ann. ' 101.021 (Vernon 2005) (emphasis
added).  There is no dispute that appellees= claims arise from the use of a motor
vehicle and that Hoffman acted within the scope of his employment with
Pasadena.

Instead, the parties= disagreement focuses on the question
of whether Hoffman could  Abe personally liable to the claimant[s] according to Texas
law.@  See id.  Pasadena presents
two arguments in support of its claim that Hoffman could not be personally
liable to the appellees.  First, it contends Hoffman is entitled to official
immunity, under the common law, because the evidence conclusively establishes
that he responded to the emergency call in good faith.  See Chambers,
883 S.W.2d at 658 (AIf the officers are immune from suit, they are not >personally liable to the claimant
according to Texas law.=@).  Second, Pasadena claims that
Hoffman did not act with reckless disregard for the safety of others, a
requisite finding before liability may be imposed upon one who responds to an
emergency call in an emergency vehicle.  See generally Tex. Transp. Code
Ann. '' 546.001B.005 (Vernon 1999 & Supp. 2008). 
We will address each of these arguments in turn.

                                                                           IV.

                                                        Official Immunity








Because official immunity is an affirmative defense, the
burden rests on the defendant to establish all of the elements of the defense. 
Chambers, 883 S.W.2d at 653.  Under that defense, a government employee
may be immune from a lawsuit that arises from (1) the performance of his
discretionary duties (2) in good faith, (3) provided he was acting within the
scope of his authority.  Id.  Here, appellees concede the first[3]
and third elements, leaving us to decide only whether Pasadena conclusively
established Hoffman=s good faith.  See id.; Pruett v. City of Amarillo,
947 S.W.2d 718, 722 (Tex. App.CAmarillo 1997, writ denied).

Under current Texas law, the determination of good faith
consists of a balancing test that may often turn upon the artful drafting of
affidavits.  Here, Officer Hoffman=s affidavit, which we will discuss
shortly, does not address all of the factors mandated by the prevailing
balancing test, and therefore does not conclusively demonstrate his good
faith.  Accordingly, we affirm the trial court=s decision.  We begin, however, with
a discussion of current Texas law with respect to good faith.

In the context of official immunity, Agood faith@ is defined in a counter-intuitive
fashion because it refers to a standard of objective legal
reasonableness that apparently disregards the police officer=s subjective state of mind.  See
Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex. 1997) (citing Chambers,
883 S.W.2d at 656).  Under this standard, an officer must prove that a
reasonably prudent officer might have believed his actions were justified under
the circumstances.  Wadewitz, 951 S.W.2d at 466; Chambers, 883
S.W.2d at 656B57.  By contrast, to rebut an officer=s prima facie showing of good
faith, a plaintiff must establish that Ano reasonable person in the defendant=s position could have thought the
facts were such that they justified defendant=s acts.@  Chambers, 883 S.W.2d at 657
(citations omitted).








Under Chambers and Wadewitz, that good-faith
standard of reasonableness is subject to a balancing test that weighs the need
for the officer=s actions versus the risks entailed by such conduct. 
Thus, in the context of a police-pursuit case, an officer is said to have
acted  in good faith if Aa reasonably prudent officer, under the same or similar
circumstances, could have believed that the need to immediately apprehend the
suspect outweighed a clear risk of harm to the public in continuing the
pursuit.@  Chambers, 883 S.W.2d at
656.  Then, in Wadewitz, the Court adapted the Chambers
good-faith balancing test for use in emergency-response cases:

[G]ood faith depends on how a reasonably prudent
officer could have assessed both the need to which an officer responds
and the risks of the officer=s
course of action, based on the officer=s
perception of the facts at the time of the event.  The Aneed@ aspect of the
test refers to the urgency of the circumstances requiring police intervention. 
In the context of an emergency response, need is determined by factors such as
the seriousness of the crime or accident to which the officer responds, whether
the officer=s immediate presence is necessary to prevent injury or
loss of life or to apprehend a suspect, and what alternative courses of action,
if any, are available to achieve a comparable result.  The Arisk@ aspect of good
faith, on the other hand, refers to the countervailing public safety
concerns[.]

 

Wadewitz, 951
S.W.2d at 467 (citing Chambers, 883 S.W.3d at 656).  








A defendant cannot establish good faith, nor can a plaintiff
controvert a showing of good faith, simply by offering an expert=s conclusory statement that a
reasonable officer could or could not have taken a particular action.  Wadewitz,
951 S.W.2d at 466.  Arguably, such evidence might prove or disprove negligence.[4] 
However, mere negligence is not, and should not be, the standard for visiting
liability upon a law-enforcement officer who must exercise discretion for the
protection of the public.  See Univ. of Houston v. Clark, 38 S.W.3d 578,
584 (Tex. 2000); Chambers, 883 S.W.2d at 655 (AThe complex policy judgment reflected
by the doctrine of official immunity, if it is to mean anything, protects
officers from suit even if they acted negligently.@).  Thus, instead of setting forth
what a reasonable officer could or should have done, an expert giving
testimony regarding good faith must discuss what a reasonable officer could
have believed, based on the officer=s perception of the facts at the time
of the event, and must be substantiated with reference to both the Aneed@ and Arisk@ aspects of the Chambers balancing
test.  See Wadewitz, 951 S.W.2d at 466B67.  Further, the facts of the case
may require the expert to provide a continuing assessment of the Aneed@ and Arisk@ factors, because Aemergency responses and police
pursuits may involve rapidly changing circumstances.@  Clark, 38 S.W.3d at 582B83.

With these considerations in mind, we must first determine
whether Pasadena met its initial burden to prove Hoffman=s good faith under the prevailing
test.  See id. at 588.  If not, we need not consider whether appellees
produced evidence sufficient to controvert a finding of good faith.  See id. 
To support its jurisdictional plea, Pasadena supplied an affidavit from Hoffman
explaining the reasons he chose to accelerate his vehicle without activating
the emergency lights or siren, and stating that he responded to the emergency
call in good faith.[5] 

We begin with the Aneed@ aspect of the good-faith test, which
is informed by factors including the (1) seriousness of the crime or accident
to which the officer responds, (2) whether the officer=s immediate presence is necessary to
prevent injury or death or to apprehend a suspect, and (3) the alternative
courses of action, if any, that may have been available to achieve a comparable
result.  Wadewitz, 951 S.W.2d at 467.  Therefore, we will apply each of
these factors to the evidence presented.

 

 








1.         Seriousness
of the Crime

Both Hoffman=s affidavit and the written dispatch log speak to the
seriousness of the crime that prompted the emergency call.  The incident
involved a possible hostage situation in which the suspect was reportedly
intoxicated, mentally unstable, armed, and dangerous.  In addition, the suspect
was said to have threatened to kill his girlfriend if she tried to leave the
house.  Therefore, the evidence demonstrates a serious emergency situation that
warranted an immediate response from law enforcement.

2.         Necessity
of the Officer=s Immediate Presence

As to the second Aneed@ factor, appellees acknowledge that
the possible hostage situation merited a quick response from some officers
but contend that, because Hoffman was designated as Asupporting personnel,@ his immediate presence was
not immediately necessary.  However, notwithstanding the role internally
assigned by the police dispatcher, Hoffman testified that he was close to the
crime scene and therefore expected to arrive before the other officers. 
Accordingly, his testimony is sufficient to show that a reasonable officer
could have believed his immediate presence was necessary to protect the
hostage from possible injury or death, or to apprehend the suspect.  See id.

3.         Alternative
Courses of Action to Achieve Comparable Result

Finally, to establish good faith under Wadewitz,
Hoffman was required to show that he considered alternative courses of action,
if any, that were available to accomplish a comparable result.  See id.;
Clark, 38 S.W.3d at 587B88.  That is, although Hoffman justified his decision to
respond quickly to the possible hostage situation, he must also establish good
faith in the manner in which he chose to respond.  See Pruett,
947 S.W.2d at 723 (A[T]he manner in which an act is performed also factors into
the good faith equation.@).  As the Amarillo Court of Appeals explained, in a
police-pursuit situation,








At least two decisions are involved; whether to act
and then how to act.  Though arising from a common impetus, they are
nonetheless distinct acts.  And, since each may proximately cause injury to
others, the actor=s good faith with regard to each must be established.

Thus, when complainants allege . . . that
the officer was negligent in both deciding to pursue and in pursuing in the way
he did, it is incumbent upon their opponent to conclusively prove that both
acts were undertaken in good faith.

 

Id.

Here, appellees have questioned Hoffman=s alleged decision to accelerate to
almost twice the posted speed limit without activating his emergency lights or
siren.  In his affidavit, Hoffman attempts to explain that conduct:

I determined it was necessary and appropriate to
increase my speed and not activate the audible or visual signals on my police
vehicle because I believed that if the suspect had knowledge of my presence, he
would:  (1) destroy or lose evidence of the suspected felony; (2) end the
suspected continuing felony before I obtained sufficient evidence to establish
grounds for the arrest; or (3) evade apprehension before my arrival.  In
exercising my discretion, my determination was guided by the City of Pasadena=s policies and procedures regarding emergency
responses, the laws and ordinance[s] applicable to emergency responses, and my
perception of the events as they occurred at that time.

 








As Hoffman alludes, in some circumstances the Texas Transportation Code
permits an officer to exceed the speed limit or respond without activating his
emergency lights or siren.  See Tex. Transp. Code Ann. '' 546.001(3), 546.004(c) (Vernon
1999).  The Pasadena Police Department policy manual contains a similar
provision that states, AThe PPD recognizes that police response to certain types of
offenses such as robberies in progress, may warrant rapid intervention without
the use of audible and visual devices in order to achieve a tactical advantage
. . . .@[6]  However, these provisions do not
completely absolve the officer of the duty to consider the safety of others
when driving.  See id. '' 546.001(3) (allowing emergency driver to exceed maximum
speed limit Aas long as the operator does not endanger life or property@) (emphasis added), 546.005(2)
(Vernon 1999).  Rather, to demonstrate good faith in this legal context,
Hoffman was required to show that he considered the availability of other
courses of action that might have produced the desired result C that is, arriving at the crime scene
without alerting the suspect of his presence.  See Wadewitz, 951 S.W.2d
at 467; Clark, 38 S.W.3d at 587B88.

Hoffman=s affidavit is lacking because he failed to discuss
alternatives for his decision to speed without activating emergency lights and
siren.  In some circumstances, an officer may establish good faith even though
he cannot thoroughly analyze all of the need and risk factors.  Clark,
38 S.W.3d at 583.  However, this case does not appear to fall in that category
because appellees= retained expert, Michael Yosko, suggested several
alternatives a reasonably prudent officer should have considered that might
have produced a comparable result.  Those alternatives included (1) activating
Hoffman=s emergency lights and siren until he
had arrived at, or was near to, the crime scene; (2) responding to the
emergency quickly but within the legal speed limit; or (3) choosing less
populated side streets so as to decrease the amount of traffic he might
encounter.  








Another alternative that is implied by Yosko=s affidavit, but not addressed by
Hoffman, entailed the use of his emergency lights without the siren.  As
Yosko notes, and an area map confirms, there is no clear line-of-sight from
Strawberry Road to the crime scene.  In addition, because the event occurred
during broad daylight, Yosko confirms that the suspect could not have seen
Hoffman=s emergency lights, even had they
been activated, when he responded to the dispatch.  By contrast, West testified
that he would not have turned in front of Hoffman had the latter=s emergency lights been activated. 
Thus, the record presented indicates that Hoffman=s emergency lights might have alerted
West, but not the suspect, of Hoffman=s approaching vehicle.           

Because Hoffman did not discuss the availability of
alternatives in his affidavit, Pasadena=s evidence does not satisfy the Chambers
balancing test.  See Clark, 38 S.W.3d at 588 (declining to find good
faith because officer=s affidavit did not discuss alternative courses of action); Wadewitz,
951 S.W.2d at 467 (refusing to find good faith because officer did not discuss
all of the Chambers factors); see also Junemann v. Harris County,
84 S.W.3d 689, 694B95 (Tex. App.CHouston [1st Dist.] 2002, pet. denied) (holding that officer
who failed to activate overhead emergency lights did not demonstrate good faith). 
Because Hoffman=s affidavit suffers from the same deficiency found in the
government=s evidence in Clark, Pasadena=s appeal must share its fate.  See
Clark, 38 S.W.3d at 588.  

Under current law and on the record presented, we are
compelled to conclude that Pasadena has not conclusively demonstrated Hoffman=s good faith.  See id. 
Accordingly, we overrule Pasadena=s first issue.

                                                                            V.

                                   Liability
of Emergency Responders








Pasadena=s second issue arises from chapter 546 of the Texas
Transportation Code, which governs the conduct of emergency responders.  Under
section 546.005, those who respond to emergency calls in Aauthorized emergency vehicle[s]@[7] should avoid negligent behavior but
are subject to liability only if they act with reckless disregard for the
safety of others.  See Tex. Transp. Code Ann. ' 546.005 (Vernon 1999); Green v.
Alford, 274 S.W.3d 5, 22 (Tex. App.CHouston [14th Dist.] 2008, pet.
filed) (citing City of Amarillo v. Martin, 971 S.W.2d 426, 431 (Tex.
1998)).  Pasadena contends appellees have not demonstrated that Hoffman drove
recklessly and, building on that argument, concludes its immunity has not been
waived under TTCA section 101.021 because Hoffman cannot be personally liable
to the claimants absent a showing of recklessness.  

Because we are required to assume the truth of the evidence
favoring appellees,[8] we hold that
a fact issue exists under section 546.005.  Therefore, we must affirm the trial
court=s denial of Pasadena=s plea to the jurisdiction.  See
Miranda, 133 S.W.3d at 227B28.

In the context of an emergency responder=s liability under section 546.005,
proof of Areckless disregard@ requires the plaintiff to show that the defendant committed
an act or omission which he knew or should have known posed a high degree of
risk of serious injury.  See Martin, 971 S.W.2d at 430; Green,
274 S.W.3d at 23.  Generally, both sides analyze Hoffman=s allegedly reckless conduct under
some of the same operative facts, including his admission of the risks that
accompanied his decision to speed without activating emergency lights or siren:

I recognized before I initiated my response, that
there was some risk, as there always is, inherent anytime a police officer
makes the decision to increase his speed and not activate either the audible or
visual signals responding to an emergency situation.  Indeed, this case was no
exception.  I recognized the possibility existed that if I increased my speed
without activating the audible or visual signals on the police vehicle, my
vehicle could increase the risk of a collision causing property damage and/or
injury to another driver, bystander or property owner.  I considered each of
these potential risks before I initiated the pursuit and continually re-evaluated
them up until the time of the accident.

 

Despite this subjective awareness that his actions posed a risk of injury
to civilians, Hoffman concludes the risk was not serious because traffic
on Strawberry Road was relatively light.








Appellees= expert reached the opposite conclusion, that is, Hoffman
knew his conduct presented a high degree of risk of physical harm to the public
but proceeded in reckless disregard of that risk.  To support that opinion,
Yosko cited all of the following considerations:

$          Under Texas law, an officer may not exceed
the posted speed limit unless he can do so without endangering life or
property.  See Tex. Transp. Code Ann. ' 546.001(3).  Nevertheless, Hoffman accelerated his
vehicle to almost twice the posted 35-mile-per-hour speed limit.

$          Generally accepted standards of
law-enforcement conduct indicate that an officer who greatly exceeds the speed
limit must activate his emergency lights or siren.

$          In addition, the Transportation Code and the
policies and procedures of the Pasadena Police Department generally require a
responding officer to use audible or visual signals when responding to an
emergency call.  See id. '
546.003 (Vernon 1999).

$          Hoffman allegedly violated Pasadena=s policies by failing to notify the police dispatcher
of his intent to invoke AEmergency Traffic@
without utilizing his lights or siren.

$          These rules exist for the safety of the
public because, as Hoffman admitted in his deposition, officers have a
responsibility to use their emergency lights and siren to advise the public of
their intention to violate traffic laws.

$          In his deposition, Hoffman confirmed he knew
that operating a police car at an excessive rate of speed, without activating
lights or siren, was a dangerous act that could cause serious injury or death
to the public.

$          Hoffman could have selected one of several
alternative courses of action that would have lessened or eliminated that risk
of serious injury to the public, but chose not to do so.

 








In light of this testimony, a fact issue exists.  See
Green, 274 S.W.3d at 26 (holding that operator=s excessive speed supported finding
of recklessness); City of Amarillo v. Pruett, 44 S.W.3d 702, 706 (Tex.
App.CAmarillo 2001, pet. denied)
(permitting factfinder to consider officer=s speed in determining
recklessness).  Therefore, on the record presented, we are compelled to
overrule Pasadena=s second issue and affirm the trial court=s denial of its plea to the
jurisdiction.  See Miranda, 133 S.W.3d at 227B28.

                                                                CONCLUSION

Finding no merit in the issues presented, we affirm the
judgment of the trial court.

 

 

 

/s/      Kent
C. Sullivan

Justice

 

 

Panel
consists of Justices Seymore and Sullivan, and Visiting Justice Rondon.*









           [1] 
An interlocutory appeal may be brought from an order denying a governmental
unit=s plea to the jurisdiction.  Tex. Civ. Prac. &
Rem. Code Ann. ' 51.014(a)(8) (Vernon 2008).





           [2] 
Under the applicable standard of review, we must take as true the testimony of
Michael Yosko, appellees= retained expert, who estimated the speed of Hoffman=s vehicle at between sixty-three and sixty-nine miles
per hour.  See Miranda, 133 S.W.3d at 228.





           [3] 
See also Chambers, 883 S.W.2d at 655 (holding that police officer=s decision to pursue suspect involves a discretionary
act).





           [4] 
See 20801, Inc. v. Parker, 249 S.W.3d 392, 398 (Tex. 2008) (defining Anegligence@ in
terms of what a reasonably prudent person would or would not have done
under the same or similar circumstances).





           [5] 
Pasadena also submitted affidavits from Michael Massey and Kenneth Mack, the
police chiefs for the Pasadena and Galveston police departments, respectively. 
However, neither affidavit contains a substantive discussion of the pertinent
factors that is required under Wadewitz.  See Wadewitz, 951
S.W.2d at 466B67.  Instead, each witness indicates that he has read
Hoffman=s affidavit and agrees that a reasonably prudent
officer could have believed the facts justified his conduct.  Because these
conclusory affidavits do not contribute meaningfully to Hoffman=s good-faith discussion, we do not refer to them in
our analysis.  See id.





           [6] 
Capitalization normalized.





           [7] 
The term Aauthorized emergency vehicle@ includes police vehicles.  See Tex.
Transp. Code Ann. ' 541.201(1)(A) (Vernon 1999 & Supp. 2008).





           [8] 
See Miranda, 133 S.W.3d at 228.





           *  The Honorable Reece Rondon,
Judge of the 234th District Court of Harris County, participating by
assignment.  See Tex. Gov=t
Code Ann. ' 74.003(h) (Vernon 2005).